IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| HERBERT WHITLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 CV 2055 |
| v. | ) | |
| | ) | |
| CITY OF PARIS, Present and Former | ) | JURY TRIAL DEMANDED |
| Paris Police Officials Chief Gene Ray and | ) | |
| Detective James Parrish; former Illinois | ) | |
| State Trooper Jack Eckerty; former | ) | |
| Edgar County State's Attorney Michael | ) | |
| McFatridge; EDGAR COUNTY; and | ) | |
| Illinois State Police Officials Steven M. | ) | |
| Fermon, Diane Carper, Charles E. | ) | |
| Brueggemann, Andre Parker, Kenneth | ) | |
| Kaupus and Jeff Marlow; and Deborah | ) | |
| Rienbolt, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO CERTAIN DEFENDANTS' MOTION TO DISMISS
COUNTS II, III AND V**

NOW COMES Plaintiff, Herbert Whitlock, by and through his attorneys, Ronald H. Balson and Carrie A. Hall of Michael Best & Friedrich LLP and Richard S. Kling and Susana Ortiz of the Law Offices of Richard Kling, and as and for his Response to the Motion to Dismiss Counts II, III and V, filed by Defendants City of Paris, Gene Ray, James Parrish and Jack Eckerty, and joined by Defendant Edgar County (the "Moving Defendants") submit the following statement of facts and memorandum of law. For the reasons set forth hereinafter, Whitlock prays that the motion be denied in its entirety.

1

# I. Introduction

Whitlock has filed an eleven count complaint arising out of his arrest, prosecution, post-conviction proceedings and his twenty-one year incarceration. He has alleged that the Moving Defendants, and each of them, engaged in willful, egregious conduct which deprived him of his liberty from 1987 to 2008. He has sought relief under a variety of theories, both as federal and state based causes of action. The Moving Defendants have moved to dismiss three of the eleven counts: the federal malicious prosecution count (Count II) and the two false imprisonment counts (Counts III and V).

## II. Plaintiff States a Cause of Action for §1983 Violations based on Malicious Prosecution

1.  In his complaint, Plaintiff has alleged, *inter alia*, that the Moving Defendants engaged in the following acts:

    - Despite the existence of substantial facts leading to the identification of other suspects, they conspired to accuse and convict plaintiff. (Complaint ¶ 16)

    - One or more of them plied Darrell Herrington with alcohol, ignored his identification of the murderers as "Jim and Ed," urged him to change his story, submitted him to hypnosis and then narrated to him what he had supposedly revealed, submitted him to a polygraph examination where he was found to have engaged in "purposeful non-cooperation, suppressed the fact that he had a cut on his hand, offered him assistance in getting his suspended driving privileges restored and then suppressed and secreted all of these activities from plaintiff for many years. (Complaint ¶¶ 20-27)

    - Conspired with defendant Deborah Rienbolt to fabricate a story against plaintiff accusing him of committing the murders in exchange for financial and other benefits provided to Rienbolt. Defendants concealed and suppressed evidence that Rienbolt's story was false and omitted the exculpatory materials from official reports. (Complaint ¶¶ 29-34, 37, and 38)

    - Using false reports from Rienbolt and Herrington, the Moving Defendants wrongfully charged plaintiff with murder and arson, wrongfully suppressed and concealed exculpatory and favorable evidence from him and his attorney, wrongfully presented the false evidence in trial and wrongfully continued in the fabrications, concealments and suppressions throughout the post-trial proceedings. (Complaint ¶¶ 39-50, 57, 59-60, 65, 67, 82, 90)

2.  As a consequence of the wrongful acts of Moving Defendants, acting alone and in concert with other defendants, the Complaint alleges they prevented Whitlock from receiving a fair trial and caused his conviction and continued incarceration by means of fabricated evidence, concealed and suppressed evidence, false reports, false testimony, false statements made to influence judicial bodies and by obstructing investigations, all of which would have led to discovery of the exculpatory and favorable evidence and likely resulted in his exoneration. Specifically, in Count II, Whitlock asserts that the aforementioned conduct constituted malicious prosecution depriving him of his constitutional right to a fair trial and fair post-conviction proceedings, redressable under §1983.

3.  The Moving Defendants rely on the 2001 decision of *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), and urge this court to dismiss Count II because the Seventh Circuit held in that case, at that time, that the existence of a state malicious prosecution remedy barred a §1983 malicious prosecution cause of action for Newsome.

4.  Two Supreme Court decisions, one issued recently (*Wallace v. Kato,* 127 S.Ct. 1091 (2007)), fully explore the relationship between a §1983 action for damages for unconstitutional confinement and the tort of malicious prosecution. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court unmistakably treated an action for malicious prosecution as redressable under §1983. Noting that, "We have repeatedly noted that 42 U.S.C. 1983 creates a species of tort liability," *Id.* at 483, the Court went on to say that, "The common law cause of action for malicious prosecution provides the closest analogy to claims of the type here [unconstitutional confinement] because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." *Id.* at 484.

5.   The Supreme Court in *Heck* also noted that "…a successful malicious prosecution plaintiff may recover, in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.'" *Id.* at 484 (quoting Prosser and Keeton on Torts 888 (5th ed. 1984)).

6.   The Moving Defendants do not dispute that Whitlock has stated a cause of action for malicious prosecution under the common law (or the law of the state of Illinois), for they do not move to dismiss Count VI.  The argument raised by the Moving Defendants concerns whether or not Whitlock may also raise the claim as a valid §1983 count. Moving Defendants, relying on *Newsome*, argue that he may not.  However, the language of *Heck* and *Wallace* suggest otherwise.

7.   Although *Heck* focused on whether a §1983 malicious prosecution claim could be brought by a prisoner while his habeas corpus petition was pending and before his conviction was reversed, the Court's reasoning made it abundantly clear that malicious prosecution was cognizable under §1983.  "We hold that, in order to recover damages for allegedly <u>unconstitutional conviction or imprisonment</u>, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, <u>a §1983 plaintiff</u> must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254." *Id.* at 486-87 (emphasis supplied).

8.   To further punctuate the principle, the Court held, "Under our analysis, the statute of limitations poses no difficulty while the state challenges [to the conviction] are being pursued, <u>since the §1983 claim has not yet arisen</u>." *Id.* at 489 (emphasis supplied).  The logical corollary

4

is that once state challenges are completed, as in Whitlock, the §1983 claim has ripened. The *Heck* Court went on to say, "…a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence [which the Court has already identified as akin to malicious prosecution] does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90.

9. In the 2007 *Wallace* decision, the Supreme Court also discussed the genus of an unconstitutional confinement claim. Of course, *Wallace* is the very same case cited by the Moving Defendants to support their motion for dismissal of the false imprisonment counts (see *infra*), which makes it ironic that the Moving Defendants would promote the precedential value of part of the decision, while disregarding the rest. The *Wallace* Court held, "…unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Wallace*, 127 S.Ct. at 1096.

10. The Seventh Circuit in *Newsome,* which was decided after *Heck* but before *Wallace,* curiously held that "…malicious prosecution is not tenable as an independent constitutional theory." *Newsome*, 256 F.3d at 753. The Seventh Circuit reasoned that Illinois provided a remedy for malicious prosecution and accordingly denied §1983 jurisdiction. In doing so, the Seventh Circuit based its decision on its interpretation of the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). The basis for the *Albright* decision remains unclear: four of the justices reasoned that probable cause was the exclusive domain of the Fourth Amendment, one justice considered it to be substantive due process and two of the justices (with whom the Seventh Circuit chose to cast its lot) reasoned that remedies available to Albright under state law for wrongful prosecution provided him with due process, and thus, in the words

5

of the Seventh Circuit, "...knocks out any constitutional theory of malicious prosecution." *Newsome* at 750.

11. To begin with, it is important to recognize the distinction between Albright and Whitlock. Albright was arrested and prosecuted for selling an innocent substance that looked like a drug. His charges were dismissed because they did not state an offense under Illinois law. Albright never went to prison, never lost his freedom and was never subjected to an unconstitutionally unfair trial. Albright's unsuccessful §1983 claim sought damages for infringement of his substantive due process rights to be free of prosecution without probable cause. He did not claim that Illinois denied him procedural due process guaranteed by the Fourteenth Amendment.

12. The Seventh Circuit likened Albright's §1983 suit to a "garden-variety public-officer defamation case," *Albright v. Oliver*, 975 F.2d 343, 347 (7th Cir. 1992), and held that since there was no federally protected right (such as "exclusion from an occupation" *Id.* at 347), then the "heavy weaponry of constitutional litigation can be left at rest." *Id.* at 347.

13. The Supreme Court affirmed the Seventh Circuit, but did so in four separate written opinions. The majority opinion, authored by Chief Justice Rehnquist and joined by Justices O'Conner, Scalia and Ginsburg, noted that the "...Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it," *Albright*, 510 U.S. at 274, and expressed no opinion whether Albright would have succeeded had he alleged violations of his Fourth Amendment rights. They affirmed because "...substantive due process...can afford him no relief." *Id.* at 274.

14. The separate opinion filed by Justices Kennedy and Thomas, the one the Seventh Circuit chose to adopt for its *Newsome* ruling, examined Albright's claim under the "*Parrat* rule"

6

extracted from *Parrat v. Taylor,* 451 U.S. 527 (1981). *Id.* at 284. Simply stated, *Parrat* cautioned against turning every minor suit against a state actor (such as "nothing more than an automobile accident" *Parrat*, 451 U.S. at 544) into a constitutional violation under §1983. But *Parrat* did not change the law. Justices Kennedy and Thomas wrote about the "outer limits" of *Parrat*, stating, "Yet it is fair to say that courts, including our own, have been cautious in invoking the rule of *Parrat* (citation omitted). That hesitancy is in part a recognition of the important role federal courts have assumed in elaborating vital constitutional guarantees against arbitrary or oppressive state action. We want to leave an avenue open for recourse where we think the federal power ought to be vindicated." *Albright*, 510 U.S. at 284-285.

15.     Far from setting a hard and fast rule "knocking out" §1983 claims if a state remedy is also available, Justice Kennedy and Thomas viewed the existence of state remedies in the negative. In other words, they held that a §1983 action would certainly be appropriate if a state did not afford a remedy. The specific language was as follows: "That said, if a State did not provide a tort remedy for malicious prosecution, there would be force to the argument that the <u>malicious initiation of a baseless criminal prosecution</u> infringes an interest protected by the Due Process Clause and enforceable under 1983. (Citations omitted.) But given the state tort remedy, we need not conduct that inquiry <u>in this case</u>." *Id.* at 286 (emphasis supplied). It is important to note that Albright's claim was limited to the initiation of a prosecution, not the actual prosecution, trial and post-conviction proceedings, and, as stated before, Albright did not lose his liberty.

16.     Since the *Newsome* decision, the Supreme Court has had further discourse on the subject. The *Wallace* court, six years later, noted that the issue was far from settled. The

*Wallace* opinion said, "We have never explored the contours of a Fourth Amendment malicious-prosecution suit under §1983...and we do not do so here." *Wallace*, 127 S.Ct. at 1096, fn 2.

17.   The *Wallace* decision appears to open the door in situations of wrongful detention, by stating that from and after the issuance of process or arraignment, "...any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than the detention itself." *Id.* at 1096. It then becomes a question whether the wrongful use of judicial process committed by state actors, depriving a person of his liberty, states a constitutional claim for violation of procedural due process when the malicious prosecution is designed to, and does in fact, deny a person the right to a fair trial and fair post-conviction relief.

18.   The *Newsome* court quite clearly conceded that claims for wrongful detention based on violations of *Brady v. Maryland,* 373 U.S. 83 (1963) "establish a violation of the due process clause for which [officers] do not have immunity." *Newsome*, 256 F.3d at 753. In acknowledging the suitability of federal forums for redressing violations of constitutional due process in general, and recognizing that the *Brady* rule was derived from the due process clause of the Fourteenth Amendment, the Seventh Circuit in the matter of *Steidl v. Fermon*, 494 F.3d 623, (7th Cir. 2007), held that Steidl "has alleged facts that, if true, show a <u>constitutional violation</u> on the part of ISP officials." *Steidl*, 493 F.3d at 632 (emphasis supplied).

19.   In more recent language, which may be interpreted as further defining the *Newsome* decision, the Seventh Circuit stated, "[*Newsome*] had held that because there is no constitutional right not to be prosecuted without probable cause, a plaintiff could not state a section 1983 claim simply by showing that he was wrongly prosecuted but rather must establish that he was deprived of a specific constitutional right, such as the right to a fair trial." *Holmes v.*

*Hoffman Estates*, 511 F.3d 673, 683 (7th Cir. 2007) (citing its decision in *Penn v. Harris*, 296 F.3d 573, 576-577 (7th Cir. 2002)). In our case, Whitlock has alleged that the malicious prosecution deprived him not only of a fair trial, but of a right to fair post-conviction proceedings. Further, in *Holmes*, the Seventh Circuit went on to say, "The plaintiff in *Penn* had failed to [allege the deprivation of a right to a fair trial], and for that reason we concluded that his section 1983 claim was defective and the district court had properly disposed of it on summary judgment." *Id.*

20.    Given the foregoing reasoning, it seems logical to assume that §1983 claims redressing *Brady* violations which have as their consequence, a corruption of the judicial process and a resultant wrongful detention (both of which *Newsome* clearly concedes are cognizable in Federal Court), will also state a viable cause of action that the *Wallace* decision would characterize as "malicious prosecution." To construe otherwise, one must presume that the Supreme Court in *Albright* chose to remove all civil *Brady* claims from the §1983 umbrella, a step the Justices did not articulate and no court has held. The Moving Defendants do not argue, nor could they credibly assert, that all Fourteenth Amendment due process violations are precluded by the existence of analogous state tort relief. It seems anomalous that one such remedy, malicious prosecution, should be thus singled out and excluded from the panoply of relief available to the §1983 plaintiff.

### III. The Statute of Limitations for Whitlock's False Arrest and Imprisonment Has Not Yet Expired

21.    The Moving Defendants, relying on *Wallace*, assert that the statute of limitations on the claims of false arrest and imprisonment expired in 1989 and, therefore, Counts III and V are barred. They reason that the two year statute on the federal claim and

the one year statute on the state claim commenced to run on the date Whitlock was indicted, March 10, 1987. The *Wallace* court, however, did not address two significant points which are present in our case: 1) the statute was tolled by the wrongful detention until Whitlock's release, and 2) the indictment and subsequent conviction were procured by continuing corrupt and unconstitutional means which did not cease until shortly before his release.

22. Justice Scalia authored both the *Wallace* and the *Heck* opinions, so they must be read in conjunction and deemed to be compatible. In *Heck*, he wrote, "Even a prisoner who has fully exhausted available state remedies has no cause of action under 1983 <u>unless and until</u> the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489 (emphasis supplied).

23. Although in *Wallace*, Justice Scalia stated that the "Limitations period begins to run when the alleged false imprisonment ends," *Wallace*, 127 S.Ct. at 1096, he recognized that "it is 'the standard rule that [accrual occurs] when the plaintiff has complete and present cause of action." *Id.* at 1095. In *Wallace*, the wrongful conduct all occurred prior to the plaintiff's trial. He was thereafter imprisoned, not by anything that was contemporaneously done to keep him in prison, but by the unconstitutional conduct that occurred at the time of his arrest. Those facts differ markedly from Whitlock who was subject to wrongful conduct throughout his twenty-one year incarceration. Thus the tort was not completed until Whitlock's release.

24. Justice Scalia wrote, "Under the traditional rule of accrual…the tort cause of action accrues and the statute of limitations commences to run, when the wrongful act or omission results in damages." *Wallace*, 127 S.Ct. at 1097. In our case, the wrongful acts were

ongoing and did not completely result in Whitlock's damages until they ceased, immediately prior to his release. Indeed, the Complaint alleges that efforts were made throughout Whitlock's post conviction proceedings, well into 2007, to suppress evidence and cover-up the wrongful conduct.

25. The Moving Defendants have also argued that the state law false imprisonment claim is barred by the statute of limitations. This particular argument does not find support in the *Wallace* decision, because *Wallace* did not address a state law claim, nor did it discuss whether the statute of limitations for an Illinois claim for false imprisonment would be equitably tolled.

26. Illinois law liberally provides for the equitable tolling of the statute of limitations. The court in *Dunn v. Grant Hospital of Chicago*, 1997 WL 51450 (N.D. Ill. 1997), applying Illinois law, explained the circumstances under which a statute of limitation is tolled:

> The equitable tolling doctrine does not require that the plaintiff show any misconduct on the part of the defendant. Instead, equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim. The doctrine assumes that the plaintiff knows that he has been injured, and thus the statute of limitations is deemed to have begun to run. However, the statute of limitations can be equitably tolled when the plaintiff cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant, or when the plaintiff is excusably ignorant of the limitations period.

*Dunn* at *3 (internal quotations omitted). *See also Moore v. Morales*, 415 F. Supp. 2d 891 (N.D. Ill. 2006) (denying a motion to dismiss because the plaintiff pleaded sufficient facts for the statute of limitation to be tolled).

27. The concept of continuing wrongdoing was addressed in *Feltmeier v. Feltmeier*, 207 Ill.2d 263 (2003), where the court ruled, "a continuing tort, therefore, does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves

viewing the defendant's conduct as a continuous whole for prescriptive purposes." *Feltmeier* at 279.

28.  Whitlock also adopts the arguments on this point against these same defendants, made by Randy Steidl in his memorandum of law, where he asserts that Illinois law supports the conclusion that a false imprisonment claim accrues at the time a plaintiff is released from confinement, irrespective of whether there is continuing misconduct alleged.

### IV. Conclusion

For the foregoing reasons, Plaintiff Herbert Whitlock prays that the Moving Defendants' motion to dismiss Counts II, III and V be denied.

HERBERT WHITLOCK

By:   s/ Ronald H. Balson
      One of his attorneys

Ronald H. Balson  rhbalson@michaelbest.com
Carrie A. Hall  cahall@michaelbest.com
Michael Best & Friedrich LLP
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, IL 60601
(312) 222-0800
Fax: (312) 222-0818

- and -

Richard S. Kling  rkling@kentlaw.edu
Susana Ortiz  sortiz@kentlaw.edu
Law Offices of Richard Kling
565 West Adams Street, 6th Floor
Chicago, IL 60661-3691
(312) 906-5155
Fax: (312) 906-5299